J. S. DAY *et al. v.* J. F. JOINER *et al.*

TAXATION. *Capital stock. Charter exemption.* An exemption from taxation contained in a railroad charter, embracing capital stock, with the road, fixtures and appurtenances, does not cover a hotel building erected within the space which the company is entitled to hold for right of way, though it was built under a lease from the company, and is a convenience to passengers and a means of profit to the road. It does properly include ticket offices in the same building.

FROM HARDEMAN.

Appeal from a judgment of the Circuit Court at Bolivar.

No counsel marked for either party.

McFARLAND, J., delivered the opinion of the court.

The question in this case is whether or not a hotel building, situated at Grand Junction, in Hardeman county, is exempt from taxation.

By the charters of the Mississippi Central Railroad Company and of the Memphis and Charleston Railroad Company, they were allowed to appropriate 100 feet on each side of the track as a right of way, and when the laws upon this subject were complied with, they became vested with a good title thereto, so long as the same should be used for the purpose contemplated by the charter. By the charter of the first named company, passed by the Legislature of 1863-4, it was provided "that the capital stock of said com-

pany and the road, with fixtures and appurtenances, including workshops, warehouses and vehicles of transportation shall be forever exempt from taxation." By the general law, all public roads, and all capital of every incorporated company, exempt from taxation by its charter, are exempt from taxation. See Code, sec. 542.

The Mississippi Central Railroad Company claims to be vested with title to ninety acres of land at Grand Junction, including the crossing of the two roads, as the centre of the tract. This they claim title to under a deed from Archer Pledge, dated 6th of May, 1854.

On the 21st of December, 1865, a contract was entered into between said two railroad companies upon one part, and J. L. Pledge and S. J. Pledge of the other part, the substance of which is, that the railroad companies leased to said Pledge a lot in the angle formed by the crossing of the two roads, west of the Mississippi Central· and north of the Memphis and Charleston road; and the party of the second part bound themselves to erect upon the lot a first-class hotel and passenger house for the accommodation of the passengers of the two roads, and to have a first class hotel kept at the house; and if they failed to do so, the companies were authorized to take possession of the hotel property, paying the lessees its reasonable value. This contract further provides that the lessees shall furnish to each of the railroad companies a room of sufficient size, and conveniently situated, for a ticket and baggage office. The hotel

Day v. Joiner.

was afterwards, in the year 1866, erected by the lessees and their assignees. One hundred feet from the centre of each road in the angle includes the entire building. The lessees also built an office for each road, as a ticket and baggage office. These offices adjoin the hotel, but are not parts of the hotel building proper. The hotel embraces a number of rooms, and is used as other hotels of a similar character.

We will not question the power of the Legislature to make exemptions in favor of public enterprises; and further, we will concede that, under the clause exempting the road with its fixtures and appurtenances, the road itself, with all fixtures and appurtenances placed within one hundred feet of the road, are exempt; but fixtures and appurtenances must be held to mean such as may be fairly regarded as necessary to the convenient use of the road as carriers of passengers and freight, as contemplated by their charter.

In 2 Redfield on Railways, 387, it is said: "In *Pennsylvania and Lehigh Navigation Company* v. *Northampton County*, it was held that the toll-house and offices of the canal company are such a necessary incident of the corporation and its functions, that they cannot be assessed and taxed as separate real estate." And in a later case, it was held that such property as is appurtenant and indispensable to the construction and operation of a railway—as water stations and depots, and probably offices and oil houses, car and engine houses, and all such erections as may fairly be regarded as necessary to the convenient use of the road—are to be held exempt from taxation, as form-

ing a part of the incorporeal estate of the corporation. But it was also said in this last case, that those erections which are only indispensable to the making of profits—such as warehouses, coal lots, coal shutes, machine shops, wood yards, and what does not form part of the road—are liable to taxation.

In Pierce on Railroad Law, p. 48, it is said, in New Jersey, where a specific tax is, by the charter, imposed on the capital stock, and the company exempted from further taxation, the exemption covers only such real estate and property as are reasonably necessary for its purposes, and not such as are merely convenient and not necessary. Thus depots, car houses, water tanks, shops for repairing engines, houses for switch and bridge tenders, coal and wood yards for fuel for the locomotives, are exempted; but lands for dwellings for employees, for car or locomotive shops, coal mines and other property held for profit are liable to taxation. See, also, opinion of Chief Justice Shaw in *Worcester* v. *Western Railroad Co.*, 4 Met., reported note 1, p. 51, Pierce on Railroad Law.

From these authorities the principle seems clear that fixtures or appurtenances, in the sense of the charter referred to, means such as are necessary and proper to be used by the railroad company in the exercise of its business as a common carrier.

While it may be true that the keeping of a hotel and eating-house at a point convenient to a railroad may contribute to the prosperity of the road, yet we think it very clear that the business of hotel keeping is entirely separate and distinct from the business of

the railroad company as contemplated by its charter. It was certainly never intended to allow railroad companies, or their lessees, to erect and carry on hotels and other business enterprises, within the territory covered by the 100 feet, free from the obligations and taxes imposed upon other propertyholders. This is entirely a separate and distinct business, carried on for the accommodation of the railroad passengers and for the profit of the parties engaged in it, and is in no just sense an appurtenant to the railroad. We cannot see how it can be held that the capital of these parties vested in this hotel shall be exempted, while a similar building a few feet further from the railroad, and engaged in the same business, shall be liable to the tax, in view of the doctrine of equal taxation. The railroads cannot grant this privilege. Their authority is simply to use the land for a certain purpose—as a right of way for a railroad. When they cease to use it for this purpose, their right ceases; beyond this they cannot go themselves, or grant to anyone else. The question seems to us too clear to require further illustration or authority.

It does not clearly appear whether, in the assessment for taxes, the ticket and baggage offices of the two railroads were included. These, we think, are the proper appurtenances of the railroads, and are exempt; but as it does not affirmatively appear that they were included, we hold that the judgment of the Circuit Court dismissing the *certiorari* and *supersedeas* and rendering judgment for the taxes, is correct and will be affirmed.